**TARTER KRINSKY & DROGIN LLP**
*Attorneys for 42-05 Parsons LLC*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re:                                                  :
                                                        :   Chapter 11
LEFKARA GROUP LLC,                                      :
                                                        :   Case No.: 12-11702 (SMB)
                                    Debtor.             :
------------------------------------------------------------ x

### 42-05 PARSONS LLC'S PLAN OF LIQUIDATION
### FOR LEFKARA GROUP LLC

# TABLE OF CONTENTS

I.   DEFINITIONS ...................................................................................................................1

II.   TREATMENT OF UNCLASSIFIED CLAIMS ................................................................7

    1.   Professionals' Compensation and Reimbursement ...................................7
    2.   Administrative Claims............................................................................8
    3.   Administrative Tax Claims .....................................................................8
    4.   Priority Tax Claims ...............................................................................8
    5.   Bankruptcy Fees ...................................................................................8

III.   CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................................8

    1.   Class 1 – Other Priority Claims.............................................................8
    2.   Class 2 – City of New York's Secured Claim ..........................................9
    3.   Class 3 - Parsons Secured Claim ...........................................................9
    4.   Class 4 – General Unsecured Claims......................................................9
    5.   Class 5 – Equity Interests......................................................................9

IV.   TREATMENT OF UNIMPAIRED CLAIMS AND INTERESTS ........................................9

    Class 1 – Other Priority Claims ..................................................................9

V.   TREATMENT OF IMPAIRED CLAIMS AND INTERESTS.............................................9

    1.   Class 2 – City of New York's Secured Claim ..........................................9
    2.   Class 3 – Parsons Secured Claim .........................................................10
    3.   Class 4 – General Unsecured Claims....................................................10
    4.   Class 5 – Equity Interests....................................................................10

VI.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............10

VII.   IMPLEMENTATION OF THE PLAN .........................................................................10

    1.   Implementation ...................................................................................10
    2.   Sale of Assets.....................................................................................11
    3.   Transfer of Assets ..............................................................................11
    4.   Transfer Taxes ...................................................................................11
    5.   Vesting of Assets ................................................................................11
    6.   Settlement of Foreclosure Action .........................................................12
    7.   Funding .............................................................................................12
    8.   Cooperation of Debtor.........................................................................12
    9.   Management of the Debtor ...................................................................12
    10.   Execution of Documents ......................................................................12
    11.   Filing of Documents ...........................................................................13
    12.   Preservation of Causes of Action .........................................................13

VIII.   PROVISIONS GOVERNING DISTRIBUTIONS ..........................................................13

    1.   Disbursing Agent ................................................................................13
    2.   Rights and Powers of the Disbursing Agent ..........................................13
    3.   Timing of Certain Distributions Under the Plan.....................................13
    4.   Method of Payment .............................................................................14
    5.   Fractional Cents .................................................................................14
    6.   Minimum Distribution .........................................................................14

7.  OBJECTION DEADLINE ........................................................................................................ 14
8.  NO DISTRIBUTION PENDING ALLOWANCE ...................................................................... 14
9.  ESCROW OF CASH DISTRIBUTIONS ................................................................................... 14
10. DISTRIBUTION AFTER ALLOWANCE ................................................................................ 15
11. INVESTMENT OF SEGREGATED CASH AND PROPERTY ............................................... 15
12. DELIVERY OF DISTRIBUTIONS ......................................................................................... 15
13. UNDELIVERABLE DISTRIBUTIONS .................................................................................. 15
14. UNCLAIMED DISTRIBUTIONS ........................................................................................... 16
15. SET-OFFS ................................................................................................................................ 16

**IX.    INJUNCTION AND RELEASES** ............................................................................................ **16**

1.  INJUNCTION ........................................................................................................................... 16
2.  LIMITATION OF LIABILITY ................................................................................................ 16
3.  PLAN AND CONFIRMATION ORDER AS RELEASE ......................................................... 17

**X.     CONDITIONS TO CONFIRMATION AND THE EFFECTIVE DATE** .............................. **17**

1.  CONDITIONS FOR CONFIRMATION .................................................................................. 17
2.  CONDITIONS TO THE EFFECTIVE DATE .......................................................................... 17

**XI.    MISCELLANEOUS PROVISIONS** ....................................................................................... **17**

1.  ORDERS IN AID OF CONSUMMATION .............................................................................. 17
2.  COMPLIANCE WITH TAX REQUIREMENTS ..................................................................... 18
3.  DUE AUTHORIZATION BY CREDITORS ........................................................................... 18
4.  AMENDMENTS ...................................................................................................................... 18
5.  REVOCATION ........................................................................................................................ 18
6.  REQUEST FOR RELIEF UNDER SECTION 1129(B) .......................................................... 18
7.  COMPROMISE OF CONTROVERSIES ................................................................................. 18
8.  FILING OF ADDITIONAL DOCUMENTS ............................................................................ 19
9.  SECTION HEADINGS ............................................................................................................ 19
10. COMPUTATION OF TIME .................................................................................................... 19
11. SUCCESSORS AND ASSIGNS .............................................................................................. 19
12. NOTICES ................................................................................................................................. 19
13. GOVERNING LAW ................................................................................................................ 20
14. OTHER ACTIONS .................................................................................................................. 20
15. SEVERABILITY ..................................................................................................................... 20
16. BUSINESS DAY ..................................................................................................................... 20

**XII.   RETENTION OF JURISDICTION** ...................................................................................... **20**

1.  RETENTION OF JURISDICTION .......................................................................................... 20
2.  POST-CLOSING JURISDICTION .......................................................................................... 21

**XIII.  CLOSING THE CASE** ............................................................................................................ **22**

1.  SUBSTANTIAL CONSUMMATION ..................................................................................... 22
2.  CLOSING THE CASE ............................................................................................................. 22

42-05 Parsons LLC (the "Plan Proponent" or "Parsons"), secured creditor to Lefkara Group LLC (the "Debtor"), hereby proposes the following Plan of Liquidation in accordance with the relevant provisions of the Bankruptcy Code.

## I.    DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

**1.1.**    **"Administrative Expense"** or **"Administrative Claim"** means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under section 503(b) of the Bankruptcy Code.

**1.2.**    **"Administrative Tax Claim"** means an Administrative Claim for a tax due to a Government.

**1.3.**    **"Affiliate"** means an affiliate as defined in section 101(2) of the Bankruptcy Code.

**1.4.**    **"Allowed"** when used with "Claim" or "Administrative Expense" or "Administrative Claim" means a Claim or Administrative Expense against the Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim or Proof of Administrative Expense Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

**1.5.**    **"Allowed Interest"** means an Interest in the Debtor that has not been disallowed and is not a Disputed Interest with respect to which (i) a Proof of Interest has been timely filed

or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

**1.6.** **"Avoidance Actions"** means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553(b) and 724(a) of the Bankruptcy Code. Such Avoidance Actions include seeking to recover certain preferential transfers of the Debtor's property, including payments of Cash, made while the Debtor was insolvent during the ninety (90) days immediately preceding the Petition Date in respect of preexisting debts to the extent the transferee received more than it would have received on account of such pre-existing debt had the Debtor been liquidated under chapter 7 of the Bankruptcy Code.

**1.7.** **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time as it existed on the Petition Date.

**1.8.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to 28 U.S.C. § 157(d).

**1.9.** **"Bankruptcy Fees"** mean all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

**1.10.** **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended.

**1.11.** **"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

**1.12.** **"Case"** means this case under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date and styled *In re Lefkara Group LLC*, Case No. 12-11702 (SMB).

**1.13.** **"Cash"** means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

**1.14.** **"Claim"** means claim as defined in 11 U.S.C. § 101(5).

**1.15.** **"Class"** means a category of substantially similar Claims or Interests as established pursuant to Article 3 of the Plan.

**1.16.** **"Closing"** means the closing of the sale of the Property to Parsons at which point title to the Property will be transferred to Parsons in accordance with the Plan. The Closing, unless ordered otherwise by the Bankruptcy Court, shall take place on the Effective Date.

**1.17.** **"Confirmation"** or **"Confirmation Date"** means the date on which the Confirmation Order is entered.

**1.18.** **"Confirmation Hearing Date"** means the date the Bankruptcy Court holds the Confirmation Hearing. If said hearing is conducted on more than one (1) day, each day shall be a Confirmation Hearing Date.

**1.19.** **"Confirmation Order"** means an Order confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.20.** **"Creditor"** means a holder of a Claim against the Debtor or its estate.

**1.21.** **"Credit Bid Portion"** means the amount of $7,040,000 of the Parsons Secured Claim, which shall be credit bid by Parsons in exchange for the Property.

**1.22.** **"Creditor Fund"** means the amount of $25,000 which shall be paid by Parsons to the Disbursing Agent on Confirmation and used to fund distributions to holders of Allowed Unsecured Claims, <u>provided</u> <u>however</u> that Parsons has agreed to waive any distributions from the Creditor Fund on account of the Parsons Unsecured Deficiency Claim. The Creditor Fund shall be administered by the Disbursing Agent. Distributions from the Creditor Fund shall be made in accordance with this Plan. In the event that Allowed Unsecured Claims in the aggregate are less than $25,000, any excess shall be returned to Parsons.

**1.23.** **"Debtor"** means Lefkara Group LLC.

**1.24.** **"Deed"** means the deed as defined in Section VII.3(a) of the Plan.

**1.25.** **"Deficiency Claim"** means with respect to any Allowed Claim as to which there is collateral, that portion of the Claim that exceeds the value of all property in which the Estate has an interest that is subject to a Lien securing such Allowed Claim.

**1.26.** **"Disbursing Agent"** means the Plan Proponent or such other Entity approved by the Bankruptcy Court in the Confirmation Order.

**1.27.** **"Disclosure Statement"** means the Disclosure Statement for the Plan, including all exhibits, attachments or amendments thereto, approved by Final Order of the Bankruptcy Court as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

**1.28.** **"Disclosure Statement Approval Order"** means the order entered by the Bankruptcy Court approving the Disclosure Statement.

**1.29.** **"Disputed Claim"** means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which, no Proof of Claim has been filed;

and (b) any Claim (including an Administrative Expense), or portion thereof, that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order.

1.30. **"Disputed Interest"** means (a) any Interest that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Interest has been filed; (b) any Interest, or portion thereof, that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; and (c) until the earlier of (i) the Filing of an objection to a Proof of Interest or (ii) the last date to file objections to Interests as established by the Plan or by Final Order, an Interest represented by a Proof of Interest shall be deemed to be a Disputed Interest in its entirety if, (x) the amount specified in the Proof of Interest exceeds the amount of any corresponding Interest listed in the Schedules; (y) any corresponding Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Interest has been listed in the Schedules.

1.31. **"Effective Date"** means the later of (i) the fifth (5th) Business Day after the Confirmation Order becomes a Final Order; or (ii) the date all conditions to the Effective Date have been satisfied or waived by the entity entitled by the Plan to waive such condition[s] pursuant to Article 10 herein.

1.32. **"Entity"** means entity as defined in section 101(15) of the Bankruptcy Code.

1.33. **"Equity Interests"** means any and all Interests held in the Debtor.

1.34. **"Estate"** means the estate created pursuant to section 541 of the Bankruptcy Code.

1.35. **"Executory Contract"** means an executory contract within the meaning of section 365 of the Bankruptcy Code.

1.36. **"FAIB"** means "First American International Bank.

1.37. **"Final Order"** means an order which is: (i) not subject to a pending appeal or (ii) no longer appealable, or if appealed, affirmed on appeal with no further appeals possible.

1.38. **"Foreclosure Action"** means the foreclosure proceeding styled as *First American International Bank v. Lefkara Group LLC, Michael Paras, Orion Development, Inc., Aaxon Metal Fabricators, Inc., Queens Lumber Co., Inc., City of New York, and John Doe #1 through John Doe #12*, Index No. 26449/2010, in which Parsons substituted as Plaintiff in the place and stead of FAIB, which is currently pending in New York State Supreme Court.

1.39. **"Foreclosure Settlement"** means the settlement embodied in Section VII.6 of the Plan and further described in the Disclosure Statement at Section V.H. therein which dismisses

the Foreclosure Action in its entirety and fully resolves the claims by and between Parsons, on the one hand, and the Debtor and Paras, on the other hand.

1.40. **"General Bar Date"** means November 9, 2012**,** the date established by the Bankruptcy Court as the general bar date for filing all non-governmental Claims against the Debtor.

1.41. **"General Unsecured Claim"** means any unsecured Claim against the Debtor, including the Parsons Unsecured Deficiency Claim and any other Deficiency Claim, that is not an Administrative Expense, Professional Fee Claim, a Bankruptcy Fee, a Priority Tax Claim, Other Priority Claim, or a Secured Claim.

1.42. **"Initial Confirmation Hearing Date"** means the date the Bankruptcy Court first sets to conduct a hearing to consider approval and confirmation of this Plan.

1.43. **"Initial Distribution Date"** means the date the Disbursing Agent delivers distributions, if any, to holders of Allowed Claims, and such date shall be no later than ten (10) Business Days after the Effective Date.

1.44. **"Interest"** shall mean an "Equity Interest."

1.45. **"Interest Holder"** means the holder of an Allowed Interest in the Debtor.

1.46. **"Legal Holiday"** means a Legal Holiday as that term is used in Bankruptcy Rule 9006(a).

1.47. **"Lien"** means a charge, hold, claim, or encumbrance upon as asset of the Debtor.

1.48. **"Order for Relief"** means July 25, 2012, the date the Bankruptcy Court entered an order for relief in this Case in accordance with the relevant provisions of the Bankruptcy Code.

1.49. **"Other Priority Claim"** means that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Claim, a Secured Claim, or Bankruptcy Fees, entitled to priority under section 507 of the Bankruptcy Code.

1.50. **"Paras"** means Michael Paras, a guarantor of the obligations owed to Parsons under the Parsons Loan Documents.

1.51. **"Paras Guarantees"** means the unconditional guarantees signed by Paras in connection with the Parsons Notes.

1.52. **"Parsons"** means 42-05 Parsons LLC.

1.53. **"Parsons Loan Documents"** means each and every mortgage, assignment of rents, security agreements and ancillary documents and agreements evidencing and relating to the Parsons Notes and the Parsons Secured Claim.

**1.54.** **"Parsons Mortgages"** means the first and second mortgages on the Property executed by the Debtor in favor of FAIB, and subsequently assigned to Parsons, which secures the Parsons Notes payable to Parsons.

**1.55.** **"Parsons Notes"** means the note dated April 23, 2006 in the original principal amount of $7,000,000 and the note dated April 10, 2009 in the original principal amount of $300,000, respectively, in favor of FAIB and subsequently assigned to Parsons, which are secured by the Parsons Mortgages.

**1.56.** **"Parsons Secured Claim"** means the Claim of Parsons in the amount of not less than $15,175,000 which includes all principal, interest, costs and fees, and outlays related to the Property, permitted under the Parsons Loan Documents, secured by the Parsons Mortgages.

**1.57.** **"Parsons Unsecured Deficiency Claim"** means the amount of $8,135,000 which equals the difference between the Parsons Secured Claim and the Credit Bid Portion.

**1.58.** **"Petition Date"** means April 25, 2012, the date on which this Case was commenced by the filing of an involuntary petition for relief under chapter 11 of the Bankruptcy Code.

**1.59.** **"Plan"** means this Plan of Reorganization, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

**1.60.** **"Plan Proponent"** means Parsons.

**1.61.** **"Priority Tax Claim"** means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

**1.62.** **"Pro Rata"** means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

**1.63.** **"Professional"** means all professionals employed pursuant to Bankruptcy Court order by the Debtor under applicable sections of the Bankruptcy Code.

**1.64.** **"Professional Fee Claims"** means Claims for compensation for services rendered, and reimbursement of expenses incurred, by Professionals retained pursuant to an order of the Bankruptcy Court, as awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

**1.65.** **"Proof of Claim"** means a proof of Claim filed against the Debtor in this Case pursuant to section 501 of the Bankruptcy Code and the applicable Bankruptcy Rules.

**1.66.** **"Proof of Interest"** means a proof of an Interest filed pursuant to section 501 of the Bankruptcy Code and the applicable Bankruptcy Rules.

**1.67.** **"Property"** means the Debtor's real property located at 42-05 Parsons Boulevard, Flushing, New York 11355 also known as Block 5374, Lot 3 on the tax map for the Borough of Queens, City of New York, as well as all fixtures, appliances, improvements, licenses, permits and approvals relating thereto and all equipment and machinery used or useful to the operation and maintenance of the Property.

**1.68.** **"Receiver"** means Michael Mattone, the receiver of rents appointed in the Foreclosure Action.

**1.69.** **"Schedules"** mean the schedules of assets and liabilities and the Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court on September 12, 2012 in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

**1.70.** **"Secured Claim"** means all or part of a Claim that is protected by a lien or other interest in property of the Debtor and is in accordance with section 506 of the Bankruptcy Code.

**1.71.** **"Transfer Taxes"** means any and all stamp taxes or similar taxes within the meaning of section 1146(a) of the Bankruptcy Code.

**1.72.** **"Unexpired Lease"** means an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

## II.    TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expenses or Allowed Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof.

### 1.    Professionals' Compensation and Reimbursement

(a)    The Debtor's Professionals retained pursuant to an order of the Bankruptcy Court shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than thirty (30) days following the Effective Date. Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application for allowance of such Claims as set forth in this Plan, in full satisfaction of any and all Professional Fee Claims, including out-of-pocket expenses, that the Professionals retained by the Debtor may incur during the Case.

(b)    Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, the Plan Proponent and the Disbursing Agent in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court. Upon entry of a Final Order approving an application, the fees shall be paid within three (3) Business Days thereafter, in accordance with this Plan.

### 2.    Administrative Claims

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Allowed Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the Effective Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three (3) Business Days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Plan Proponent and the holder of such Allowed Claim.

### 3.    Administrative Tax Claims

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, all Allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) on the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Plan Proponent and such Governmental Units on or before the Effective Date.

### 4.    Priority Tax Claims

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Allowed Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Plan Proponent and holders of Allowed Priority Tax Claims, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

### 5.    Bankruptcy Fees

Upon the Effective Date, all fees and charges incurred by the Debtor and/or the Estate under 28 U.S.C. § 1930 through the Effective Date shall be paid by the Plan Proponent, except to the extent that the Debtor has Cash from sources other than the proceeds of the Property.

## III.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Except as may otherwise be provided in Article 2, Allowed Claims and Allowed Interests are classified as set forth in this Article 3 for voting and distribution purposes, pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date. The Classes are:

### 1.    Class 1 – Other Priority Claims

Class 1 consists of all Other Priority Claims entitled to priority treatment under sections 507(a)(1) through (7) of the Bankruptcy Code, and excludes Administrative Expense Claims.

**2.      Class 2 – City of New York's Secured Claim**

Class 2 consists of the unpaid real estate taxes of the City of New York.

**3.      Class 3 - Parsons Secured Claim**

Class 3 consists of the Parsons Secured Claim.

**4.      Class 4 – General Unsecured Claims**

Class 4 Consists of the General Unsecured Claims, including claims by mechanics' lien holders and the Parsons Unsecured Deficiency Claim.

**5.      Class 5 – Equity Interests**

Class 5 consists of all Equity Interests.

## IV.      TREATMENT OF UNIMPAIRED CLAIMS AND INTERESTS

### Class 1 – Other Priority Claims

Allowed Other Priority Claims, classified as Class 1 claims, are unimpaired, and, in full satisfaction, release and discharge of the Other Priority Claims, the holders of Other Priority Claims shall: on the Effective Date, or as soon as practicable after such Claim becomes an Allowed Claim, each holder of an Other Priority Claim shall receive payment from the Disbursing Agent, in Cash, in the full amount of its Other Priority Claim. The Plan Proponent is unaware of any Other Priority Claims.

## V.      TREATMENT OF IMPAIRED CLAIMS AND INTERESTS

**1.      Class 2 – City of New York's Secured Claim**

Class 2 consists of unpaid real estate taxes due to the City of New York, which is secured by a first lien on the Property.  Parsons believes that, as of September 30, 2012, the current real estate taxes due to the City of New York are approximately $535,000.  The Property is eligible for section 421-a real estate tax abatements after a TCO is issued.  It is anticipated that the real property tax abatements will be granted some time after April 2013, at which time the City of New York's real estate tax obligations will be retroactively abated and substantially all of the advances made by Parsons on account of real estate taxes will be refunded to Parsons.  Parsons believes that approximately $50,000 in real estate taxes will still be due and owing.  The Plan provides that Parsons will pay any real estate taxes to the City of New York within 60 days of the City's final determination as to the outstanding tax amount after taking into consideration the retroactive abatement pursuant to the procurement of the 421-a tax abatements.  The City of New York's lien shall continue against the Property until the real estate taxes have been paid in full.

2.      **Class 3 – Parsons Secured Claim**

Parsons shall credit bid the Credit Bid Portion of the Parsons Secured Claim, and, in exchange, Parsons shall receive a deed to the Property, free and clear of any Liens, Claims or encumbrances (the latter to the extent permitted by the Bankruptcy Code).

3.      **Class 4 – General Unsecured Claims**

In the event the Plan is confirmed, then all creditors holding Allowed General Unsecured Creditors, including mechanics' lien claims, against the Debtor, shall receive a Pro Rata distribution from the Creditor Fund, provided however that Parsons shall waive any distribution on account of the Allowed Parsons Unsecured Deficiency Claim. All such distributions shall be in full and final satisfaction, settlement, release and discharge of all Allowed General Unsecured Claims against the Debtor.

4.      **Class 5 – Equity Interests**

Equity Interests in the Debtor shall be extinguished and the holders of Equity Interests will not receive any Distributions on account of their Equity Interests. Class 5 Equity Interest Holders are deemed to have rejected this Plan under 11 U.S.C. § 1126(g), and are not entitled to vote to accept or reject this Plan.

## VI.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

In the event there are any executory contracts or unexpired leases that have not been either (a) assumed and assigned; or (b) rejected, all executory contracts and unexpired leases that exist as of the Confirmation Date between the Debtor and any Person shall be deemed rejected as of the Confirmation Date.

## VII.    IMPLEMENTATION OF THE PLAN

1.      **Implementation**

(a)     In the event that Parsons receives the deed to the Property and all of the conditions to the Confirmation and the Plan's Effective Date as set forth in Article 10 have been satisfied or waived by the party or parties entitled to waive such conditions, then Parsons shall deliver the Creditor Fund to the Disbursing Agent for payment in accordance with the Plan.

(b)     The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan. Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.

2.      **Sale of Assets**

In furtherance of implementation of the Plan, the Debtor and Parsons shall consummate the Closing and sale of the Property and such sale shall not be taxed under any law imposing a stamp or similar tax as provided for in section 1146(a) of the Bankruptcy Code. In exchange for a credit bid of the Credit Bid Portion of the Parsons Secured Claim, Parsons will receive the Deed to the Property, as more fully set forth in Section VII.3 of this Plan.

3.      **Transfer of Assets**

On the Effective Date, the Property shall be transferred to Parsons in accordance with the Plan. In connection therewith, Parsons shall receive:

(a)      a deed to the Property in form and substance acceptable to Parsons, executed by the Debtor to be recorded in the appropriate register's office (the "Deed"), free and clear of all Liens, Claims and encumbrances except as otherwise set forth in the Plan;

(b)      a bill of sale in form and substance acceptable to Parsons, executed by the Debtor, transferring to Parsons all personal property used in or useful to the operation and maintenance of the Property;

(c)      to the extent any Executory Contract or Unexpired Lease has not been terminated and is not otherwise provided to be terminated by this Plan, an assignment in form and substance acceptable to Parsons, executed by the Debtor in favor of Parsons, assigning the Executory Contracts and Unexpired Leases which Parsons elects in writing prior to the Initial Confirmation Hearing Date to be so assigned; and

(d)      an assignment in form and substance acceptable to Parsons, executed by the Debtor in favor of Parsons, assigning all licenses, approvals, permits, easements, reciprocal easement agreements and similar authorizations, and any pending application for any of the foregoing which are necessary or useful to the development, operation and ownership of the Property.

4.      **Transfer Taxes**

Pursuant to section 1146 of the Bankruptcy Code, the Deed is an instrument of transfer in connection with or in furtherance of the Plan and shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, and, to the extent provided by section 1146, if any, shall not be subject to any state, local or federal law imposing sales tax. **The first transfer of each individual condominium unit to an individual purchaser will be exempt from New York City real property transfer taxes.**

5.      **Vesting of Assets**

(a)      Except as otherwise provided in the Plan, on the Effective Date, the Property shall vest in Parsons free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

(b)     Following the Effective Date, the Debtor may settle and compromise any Claims, Interests and causes of action free of any restrictions contained in the Bankruptcy Code or Bankruptcy Rules.

**6.      Settlement of Foreclosure Action**

Upon confirmation of the Plan, pursuant to section 1123(b)(3) and Bankruptcy Rule 9019, the Foreclosure Settlement will be approved in the Confirmation Order.  The Foreclosure Settlement results in a dismissal of the Foreclosure Action, and the exchange of mutual releases by the parties as follows:

> **Releases**.  Upon confirmation of the Plan, Parsons on the one hand, and the Debtor and its Estate and Paras, on the other hand, shall irrevocably and fully release one another from and against any and all claims (as defined under 11 U.S.C. 101(5)), obligations, suits, judgments, damages, rights, causes of action and liabilities that each of them ever had, now have, or hereafter can, shall or may have against one another whatsoever, on account of, arising from, in connection with, or relating to the Parsons Loan Documents, the Paras Guarantees, the Foreclosure Action, and the Debtor's bankruptcy case.

The Confirmation Order confirming the Plan shall be sufficient to document the approval of the Foreclosure Settlement.  However, the parties may memorialize the Foreclosure Settlement in a separate writing, consistent with the provisions in the Plan and Confirmation Order.

**7.      Funding**

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan.

**8.      Cooperation of Debtor**

The Debtor, its agents, assigns, employees, stakeholders, partners, counsel, and other professionals, shall, at all times, cooperate with the Parsons and any of its successors and assigns.

**9.      Management of the Debtor**

On and after the Effective Date, the operations of the Debtor shall cease.

**10.     Execution of Documents**

(a)     On the Effective Date, the Debtor and Parsons shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)     Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, Parsons shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local

governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

**11.     Filing of Documents**

Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency, including the City of New York Department of Buildings and the New York City Department of Environmental Protection, or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

**12.     Preservation of Causes of Action**

(a)     Except as otherwise provided in the Plan, including the Foreclosure Settlement, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any Claims, rights and causes of action including, but not limited to Avoidance Actions belonging to the Estate as of the Petition Date, and arising under any provision of state or federal law, or any theory of statutory or common law or equity, including, but not limited to, any cause of action asserted, or which may hereafter be asserted.

(b)     Any recovery received by the Debtor through the prosecution, settlement or collection of any such Claim, right or cause of action, shall be used to satisfy all other Allowed Claims under the terms of the Plan and shall be distributed in accordance with the terms of the Plan and under the priority established by the Bankruptcy Code.

## VIII.   PROVISIONS GOVERNING DISTRIBUTIONS

**1.     Disbursing Agent**

Parsons shall be the Disbursing Agent to make distributions under the Plan. All Distributions under the Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

**2.     Rights and Powers of the Disbursing Agent**

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all Distributions contemplated hereby, (iii) employ and compensate professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

**3.     Timing of Certain Distributions Under the Plan**

Subject to section VIII.7 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim shall be deemed to be timely

made if made on or within five (5) days following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Disputed Claim or (iii) such other times provided in the Plan.

### 4.    Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

### 5.    Fractional Cents

If any proposed distribution under the Plan would result in a payment of a fraction of a cent, the actual payment shall reflect a rounding-up of the fraction to the nearest whole cent (rounding-up for anything greater than 0.50 of 1¢).

### 6.    Minimum Distribution

Notwithstanding anything herein to the contrary, payments and distributions by the Disbursing Agent to Creditors shall only be required if such payment and distribution is at least $20.00.

### 7.    Objection Deadline

Unless otherwise ordered by the Bankruptcy Court, any party-in-interest may file and serve any objection to any Claim or Interest at any time, but in no event after the later to occur of (i) ninety (90) days after the Effective Date, (ii) ninety (90) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed or (iii) ninety (90) days following the Initial Distribution Date.

### 8.    No Distribution Pending Allowance

Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order and any Avoidance Action against such claimant is conclusively resolved either by a consensual settlement or an entry of a Final Order adjudicating liability with respect to the Avoidance Action.

### 9.    Escrow of Cash Distributions

On any date that distributions are to be made under the terms of the Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as Claims entitled to priority pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) Claims of Governmental Units for any tax entitled to priority pursuant to sections 503 and 507 of the Bankruptcy Code, and (iii) any amount due but not payable on the Effective Date on account of Administrative Expenses or Claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code). The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or

proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto. If a Disputed Claim, however, has already been disallowed, expunged or reduced by Final Order of the Bankruptcy Court than such disallowed, expunged or reduced Claim may be excluded from such deposit.

### 10.    Distribution After Allowance

Within fifteen (15) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

### 11.    Investment of Segregated Cash and Property

To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

### 12.    Delivery of Distributions

Except as provided in sections VIII.12, VIII.13 and VIII.14 of the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

### 13.    Undeliverable Distributions

(a)    If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section VIII.14 of the Plan.

(b)    Until such time as an undeliverable distribution becomes an unclaimed pursuant to section VIII.14 of the Plan, within thirty (30) days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash and property that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c)     Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim or Allowed Interest.

## 14.    Unclaimed Distributions

Any Cash or other property to be distributed under the Plan shall revert to the Disbursing Agent for further distributions in accordance with the Plan if the Cash or other property is not claimed by the Entity entitled thereto before the later of (i) three (3) months after the Effective Date or (ii) thirty (30) days after an Order allowing the Claim of that Entity becomes a Final Order.  Further, under such circumstances, the Entity's Claim shall be deemed to be reduced to zero.  Any unclaimed Cash shall be distributed (1) first Pro Rata to other holders of Claims in the same class as the Entity whose Distribution was unclaimed up to the allowed amounts of their claims; (2) second to holders of claims in subordinate classes under the Plan up to the Allowed amounts of their Claims; and (3) to holders of Interests.

## 15.    Set-offs

The Disbursing Agent may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan the Claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims, obligations, rights, causes of action and liabilities that the Debtor has or may have against such holder.

## IX.    INJUNCTION AND RELEASES

## 1.    Injunction

(a)     Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtor's or Plan Proponent's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property sold under this Plan, (ii) the creation, perfection or enforcement of any lien or encumbrance against the Property sold under the Plan, or (iii) any Claim or Interest discharged under the Confirmation Order, the Plan or pursuant to section 1141(d)(1) of the Bankruptcy Code as against the Debtor's Property sold under this Plan.

(b)     Except as otherwise provided in the Plan or the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Property transferred under this Plan.

## 2.    Limitation of Liability

Pursuant to section 1125(e) of the Bankruptcy Code, none of the Plan Proponent, its managers, directors, agents or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, confirmation, consummation or administration of the Plan, the Disclosure

Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under the Plan, or any other action taken or omitted to be taken in connection with the Case or the Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence.

**3.      Plan and Confirmation Order as Release**

From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any Claim or liability released pursuant to this Article 9 of the Plan.

## X.      CONDITIONS TO CONFIRMATION AND THE EFFECTIVE DATE

**1.      Conditions for Confirmation**

In addition to meeting the requirements of Section 1129 of the Bankruptcy Code, the following conditions shall be conditions to the Confirmation of the Plan:

(a)      the Disclosure Statement Approval Order shall have been entered in form and substance satisfactory to Parsons in its sole discretion; and

The condition in Section X.1 of this Plan may be waived by Parsons, in its sole discretion, by Filing a "Notice of Waiver of Condition" with the Bankruptcy Court.

**2.      Conditions to the Effective Date**

The following shall be conditions to the Effective Date of the Plan:

(a)      the Confirmation Order, in form and substance satisfactory to Parsons, shall have been entered and become a Final Order;

(b)      all actions required to be taken to implement the Confirmation Order including but not limited to a sale and transfer of the Property to Parsons at the Closing shall have occurred;

(c)      Parsons shall have tendered the Creditor Fund to the Disbursing Agent; and

(d)      all other agreements, instruments or other documents necessary to implement the terms and provisions of the Plan have been executed.

The conditions in Section X.2 of this Plan may each be waived by Parsons, in its sole discretion, by Filing a "Notice of Waiver of Condition" with the Bankruptcy Court.

## XI.      MISCELLANEOUS PROVISIONS

**1.      Orders in Aid of Consummation**

Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

**2.      Compliance with Tax Requirements**

In connection with the Plan, the Debtor and the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; providing, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

**3.      Due Authorization by Creditors**

Each and every Creditor who accepts the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

**4.      Amendments**

The Plan may be altered, amended or modified by the Plan Proponent, in writing and signed by the Plan Proponent, at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**5.      Revocation**

The Plan Proponent may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

**6.      Request for Relief Under Section 1129(b)**

If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Plan Proponent may request confirmation under section 1129(b) of the Bankruptcy Code of any Class of Creditors, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019.

**7.      Compromise of Controversies**

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against the Debtors or any of them, arising out of, relating to, or in connection with, the business or affairs of, or transactions with, the Debtor. The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the foregoing compromises or

settlements, and all other compromises and settlements provided for in this Plan or the Disclosure Statement, including, but not limited to, the Foreclosure Settlement, and the findings of the Bankruptcy Court shall constitute its determination that such compromises and settlements are in the best interest of the Debtor, the Estate, creditors and other parties in interest., and are fair and equitable and within the range of reasonableness. The provisions of this Plan, including without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

### 8.    Filing of Additional Documents

Except as otherwise provided in the Plan, on or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 9.    Section Headings

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

### 10.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 11.    Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 12.    Notices

All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)    if to Plan Proponent, to Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz, Esq. and Rocco A. Cavaliere, Esq.;

(b)    if to the Debtor, to Richard Tanenbaum, Esq., 44 Court Street, Suite 917, Brooklyn, New York 11201;

(c)    if to any Creditor or Interest Holder at (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address; and

(d)    if to any Entity that has filed a notice of appearance, at the addresses set forth on such notice.

### 13.      Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 14.      Other Actions

Nothing contained herein shall prevent the Plan Proponent, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

### 15.      Severability

In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

### 16.      Business Day

In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## XII.      RETENTION OF JURISDICTION

### 1.      Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)      ensure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party, to take such action and execute such documents to effectuate the Plan;

(b)      consider any modification of the Plan proposed pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)      allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d)      grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)      resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or

with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

       (f)     ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan;

       (g)     decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

       (h)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of Article 7 of the Plan;

       (i)     resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

       (j)     modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

       (k)     remedy any defect or omission or reconcile any inconsistency in any order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

       (l)     issue any injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

       (m)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

       (n)     determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

       (o)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

       (p)     enter an order or Final Decree concluding the Case.

## 2.     Post-Closing Jurisdiction

Notwithstanding the entry of a final decree or an Order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or

otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor and the Plan Proponent.

## XIII.   CLOSING THE CASE

### 1.     Substantial Consummation

Until the occurrence of the Effective Date and Substantial Consummation of the Plan, the Debtor, its property and its Creditors shall be subject to further Orders of the Bankruptcy Court.

### 2.     Closing the Case

Upon the Substantial Consummation of the Plan, the Debtor or Parsons shall expeditiously move for the entry of a final decree closing the Case and such other relief as may be just and appropriate.

Dated: New York, New York
           October 4, 2012

42-05 PARSONS LLC

By:___/s/ Brett Goldman_____
           Name:  Brett Goldman
           Title:   Project Manager

TARTER KRINSKY & DROGIN LLP
*Attorneys for 42-05 Parsons LLC*

By:____/s/ Scott S. Markowitz_____
           Scott S. Markowitz
           Rocco A. Cavaliere
           1350 Broadway
           11th Floor
           New York, New York 10018